UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| TERRANCE WILLIAMS, | ) | CASE NO. 1:08 CV 2826 |
| | ) | |
| Petitioner, | ) | JUDGE ANN ALDRICH |
| | ) | |
| v. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J.T. SHARTLE, | ) | |
| | ) | |
| Respondent. | ) | |

On December 2, 2008, pro se petitioner Terrance Williams filed the above-captioned 28 U.S.C. § 2241 action against Warden J. T. Shartle at the Federal Correctional Institution in Elkton, Ohio ("F.C.I. Elkton"). Mr. Williams, who is incarcerated at the F.C.I. Elkton, asserts that the Bureau of Prisons (BOP) violated his right to due process when Warden Shartle "arbitrarily" changed his classification level. As relief, he seeks an order changing his violence category from "Serious" back to "Minor."

*Background*

Mr. Williams was indicted in this court on October 12, 2005 and charged with possession with intent to distribute cocaine base (crack) in violation of 21 U.S.C. §841(a)(1),

(b)(1)(A) and (b)(1)(B).  See United States v. Williams,1:05cr00501-001 (N.D. Ohio Oct. 12, 2005)(Aldrich, J.)   He pleaded guilty to the two counts and was sentenced on March 30, 2006 to concurrent terms of 120 and 60 months imprisonment for each count, followed by 4 years of supervised release.

Mr. Williams was committed to the custody of the BOP and imprisoned at the F.C.I. Gilmer in Glenville, West Virginia.  When he appeared before his unit team at F.C.I. Gilmer to discuss his custody classification he claims the BOP relied on his Pre-sentence Investigation Report (PSI) to determine his present and prior offense conduct.  He admits that the BOP considered the following facts from his PSI, to determine an appropriate classification:

> [O]n June 26, 2002, you assaulted a female in her home, by smacking her, pulling her hair, spitting on her, urinating on her, choking her, dragging her by her neck, and stomping on her head three times.  Further, the PSI indicates later that day the police responded to the University Hospital of Richmond after the female arrived at the hospital and reported being raped, in that she had non-consensual sex with you.  On July 16, 2003, you were sentenced on a charge of Disorderly Conduct in the Lyndhurst Municipal Court.

(Pet. at 2.)  Based, in part, on this PSI information the BOP designated him in a "Minor" custody classification.  This status continued until his transfer to F.C.I. Elkton.

During an institutional team meeting at F.C.I. Elkton, Mr. Williams asked why "violence was even listed on his custody points sheet, and began to challenge the accuracy of the information contained in the PSI."  (Pet. at 2-3.)  When he raised these objections to his Case Manager, Ms. Steiner, she "rejected his challenge and then raised Petitioner's points, and reclassified the violence category to 'Serious'."  (Pet. at 3.)  Relying on Sellers v.  Bureau of

2

Prisons, petitioner then requested Ms. Steiner contact the United States Probation Office to challenge the information contained in his P.S.I.[1]

In a letter dated July 31, 2007, U.S. Probation Officer William Mooney advised Warden Shartle that he investigated petitioner's claims regarding inaccuracies in his P.S.I. The officer explained that the information in paragraph 41 of the PSI came from Incident Report No. 02-01705, issued by the Richmond Heights, Ohio Police Department. The information, regarding petitioner's disorderly conduct arrest, was reviewed by the Clerk at the Lyndhurst Municipal Court to determine its accuracy. The Clerk concluded there was no indication "the court found the victim's statement to be invalid." Id.

In a letter dated October 30, 2007, Mr. Williams contacted Mr. Mooney directly to address information he still believed was inaccurate in his PSI.. Mr. Mooney responded in a letter dated November 13, 2007 explaining that he reinvestigated petitioner's claims. He discovered that paragraph 50 of the PSI came from a Cleveland Heights Police Department incident report dated June 20, 2001.[2] Mr. Mooney also disclosed that petitioner's victim, San'share Patterson, was ordered to appear as a witness in Case No. CRB0101170. The case was dismissed, but Ms. Patterson was charged with Falsification in Cleveland Heights Municipal Court on October 29,

---

[1] In Sellers, a prison inmate filed a civil action against the BOP, alleging that prison officials violated the Privacy Act, 5 U.S.C. § 552(e)(5), (g)(1)(C), (g)(4), when they used erroneous information in the inmate's PSI to make adverse decisions regarding his custody, security classification, job and quarters assignments and opportunity to earn money and good time credits. Sellers v. Bureau of Prisons, 959 F.2d 307, 308-09 (D.C.Cir.1992). The District of Columbia Circuit concluded that the BOP was required under the Privacy Act to take reasonable steps to ensure that easily verifiable information in an inmate's prison record was accurate. Id. at 312.

[2] The court is unaware of what information is contained in paragraph 50 of the PSI to which petitioner is objecting.

2001. She was subsequently found guilty and received a sentence of "90 Days jail suspended, 1 year probation and $100 fine." (Letter from Mooney to Williams of 11/13/07, at 1.) The probation officer noted that while the "information contained in paragraph 50 of the presentence report may be compromised with Ms. Patterson's conviction for Falsification, the probation office also noted an accurate disposition to the charge of conviction noted in paragraph 50." Id.[3]

      Based on this information, Mr. Williams initiated the process of exhausting his administrative remedies. He challenged the respondent's reliance on information in his PSI that he believes is inaccurate. Petitioner argued that, in spite of the fact that he pleaded guilty to Disorderly Conduct, the Lyndhurst Municipal Judge "would not have let him plead guilty to such a minor offense as 'Disorderly Conduct'" if he actually believed Ms. Patterson's testimony in his case. (Pet. at 5.) Even though the conviction related to a different case, Mr. Williams believes that Ms. Patterson's conviction for Falsification makes her testimony in his case 'suspect.'

      Petitioner exhausted his administrative remedies, but was finally denied his requested relief. The National Inmate Appeals Administrator, Harrell Watts, advised petitioner that BOP Program Statement (P.S.) 5100.08, <u>Inmate Security Designation and Custody Classification</u>, directs prison staff to "enter the appropriate number of points to reflect any history of violence, considering only those acts for which there are documented findings of guilt." (Letter from Watts to Williams of 6/20/08, at 1.) Mr. Watts noted that Warden Shartle determined that petitioner's offense behavior for Disorderly Conduct reflected "a serious history of violence because of the aggressive and

---

[3] Mr. Mooney also noted that petitioner and his attorney had the right to file any objections to information in the PSI within 14 days after first disclosure. He attached a copy of an addendum to the PSI which indicated that defense counsel for the petitioner never filed any objections to the PSI, and petitioner never raised any objections to the report at the time he was sentenced.

intimidating behavior which was likely to cause serious bodily harm." Id. Mr. Watts found that the warden's decision was well within his discretion and in compliance with policy. Moreover, he noted that P.S. 5100.08 did not prohibit prison staff from correcting a Custody Classification Form at any time.

*Analysis*

In his petition before this court, Mr. Williams complains that the BOP is not authorized to change his originally assigned "Minor" violence severity classification. He questions why the classification changed when the information upon which it was based remained the same. He notes that it was only after he inquired as to why there was any violence classification that it was increased to "Serious."

Mr. Williams concedes that it is within the BOP's discretion to establish a prisoner's security status. He argues, however, that once it is established it cannot be changed unless the circumstances upon which it was determined have changed as well.

*28 U.S.C. § 2243*

Upon application for a writ of habeas corpus, a district is tasked to immediately "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. Based on the facts alleged, petitioner is not entitled to the relief he seeks from this court.

*28 U.S.C. § 2241*

A petition for writ of habeas corpus filed by a federal inmate under 28 U.S.C. § 2241 is proper where the inmate is challenging the manner in which his or her sentence is being executed. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir.1998). As explained by the Ninth Circuit, it is the "likelihood of the effect on the overall length of the prisoner's sentence ... [that] determines the availability of habeas corpus." Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir.2003), cert. denied, 541 U.S. 1063 (2004). Where, as here, petitioner is not complaining about the conditions of his confinement, but the manner in which the BOP decided to execute his sentence, the court will address the writ.

*Change Security Classification*

Mr. Williams has not established any legal support for his claim that the BOP cannot change his security status. While he protests the fact that the P.S.I. information upon which Warden Shartle based his decision did not change from F.C.I. Gilmer to F.C.I. Elkton, petitioner fails to proffer any legal support for his position. Moreover, petitioner cannot otherwise invoke the procedural guarantees of the Due Process Clause to challenge a change in his security classification because, as a prisoner, he has no constitutional right to any particular security classification. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Furthermore, he does not allege that the change to his security classification will affect the duration of his sentence, or how the change imposed a significant hardship upon him. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir.1995) (applying Sandin to federal prisoner).

*Conclusion*

Based on the foregoing, the petition is denied pursuant 28 U.S.C. § 2243. Further,

the court certifies that an appeal from this decision could not be taken in good faith.[4]

       IT IS SO ORDERED.

                                          s/Ann Aldrich

                                          ANN ALDRICH
                                          UNITED STATES DISTRICT JUDGE

Dated: February 13, 2009

---

[4] 28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith."